UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-4245-CIV-GOLD/SIMONTON

REGINA RUTH EWING,

    Plaintiff,

v.

INTEROCEAN UGLAND MANAGMENT and,
EL MORRO, and JAY HEATER,

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON UGLAND'S *FARAGHER* AFFIRMATIVE DEFENSE

Plaintiff Regina Ewing ("Ewing"), by and through her undersigned counsel, hereby files her motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 as to Ugland's asserted *Faragher* affirmative defense. This defense is unavailable to Ugland because (1) Ewing suffered an adverse employment action at the hands of her supervisor/harasser in the form of a written reprimand and a recommendation not to re-hire her; (2) Heater's harassment of Ewing was reported to Ugland's highest ranking officer by another officer, but he undertook no investigation, took no remedial measures, and did not formally discipline Heater in any way; and (3) Ugland did not provide any training whatsoever to its officers in enforcing its putative sexual harassment policy. Support for this motion is set forth in the following statement of undisputed facts and memorandum of law.

### UNDISPUTED FACTS

(1)    Jay Heater (the harasser) was Ewing's direct supervisor, and outranked all other

officers except the captain. *See* deposition of Jay Heater at page 13, previously filed with the Court (hereinafter "Heater at ____").

(2) Heater called to Regina Ewing "hey, come here, you dumb bitch!" while supervising her work. Heater at 82.

(3) Second Officer Deward Benton reported to Captain Peter Villacampa long before Ewing fled the *El Morro* that Heater had engaged in this sexually harassing conduct. Villacampa at 58.

(4) For an officer to call a seaman a "dumb bitch" is sexual harassment and clearly violates Ugland's written sexual harassment policy. *Id.* at 51-53, 60

(5) According to Ugland's admissions, the correct course of action for Captain Villacampa to take upon receiving this report would have been to <u>immediately investigate and take remedial measures</u> by doing <u>all</u> of the following (*id.* at 34):

   (1) interviewing Ewing to ascertain the extent of the harassment and taking remedial measures (*id.*);

   (2) notifying Ugland's home office (*id.*); <u>and</u>

   (3) formally disciplining Heater by (*id.*):

      (1) At a minimum, issuing a formal written reprimand (*id.*); or

      (2) Immediately terminating Heater (*id.*).

(6) According to his own admissions, however, Villacampa did none of this. Instead, he:

    (1) never interviewed Ewing at all, and took no remedial measures such as reassigning Ewing to another part of the ship where she would not be harassed by Heater (Villacampa at 61-62);

    (2) did not notify Ugland's home office of the harassment until after Ewing had filed her EEOC complaint (Villacampa at 59, 90); and

    (3) did not formally discipline Heater in any fashion; instead, Villacampa simply told him not to do it again. *Id.* at 59.

(7) Captain Villacampa admits that had received <u>no training of any kind from Ugland</u> on sexual harassment, Ugland's policy for dealing with harassment, or how to enforce that policy before November of 1999 -- the cruise on which Ewing was harassed. Villacampa at 54.

(8) About two weeks after Ewing refused to come to Heater's cabin to "hang out" at 11:30 at night, Jay Heater drafted a written reprimand which he asked Captain Villacampa to issue to Ewing. Villacampa attempted to do so, but Ewing refused to accept it, and quit. Heater at 208-211. *See* footnote 2.

(9) Before Ewing was allowed to go ashore, Heater wrote a recommendation that Ewing not be eligible for re-hire by Ugland. Heater at 76.

## MEMORANDUM OF LAW

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the Supreme Court held that the employer is necessarily liable for actionable sexual

harassment by its supervisor that results in a "tangible employment action" being taken against the employee. *Id.* at 807-08, 118 S.Ct. 2275. The Court further held that, when no tangible employment action is taken, the employer generally is liable but may interpose as an affirmative defense that (1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 808, 118 S.Ct. 2275; *accord Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762-65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Ugland asserts *Faragher* and *Ellerth* as an affirmative defense to liability. This defense is unavailable here, and summary judgment in Ewing's favor is appropriate.

A.  *Ewing Suffered a Tangible Adverse Employment Action*

No *Faragher* affirmative defense is available when the supervisor's harassment culminates in a tangible employment action. *See Burlington*, 524 U.S., at 762-763, 118 S.Ct., at 2269. Every Circuit holds that a refusal to hire is an adverse employment action. Courts that have addressed it have further held that a recommendation not to re-hire is an adverse employment action. The U.S. Court of Appeals for the Eleventh Circuit, joining the majority of other circuits, has held that a written reprimand constitutes an adverse employment action. *Samedi v. Miami-Dade County*, 134 F. Supp.2d 1320, 1342 (S.D. Fla. 2001)("An adverse employment action 'as a matter of law includes not only discharges, but also demotions, **refusals to hire**, refusals to promote, and **reprimands**.' *McCabe v. Sharrett, Jr.*, 12 F.3d 1558, 1563 (11th

Cir.1994) (*citing Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).").[1]

Jay Heater drafted a written reprimand and requested that Captain Villacampa issue it to Ewing only two weeks after she had rebuffed his advance. Captain Villacampa did, in fact, attempt to serve Ewing with this written reprimand, but she refused to accept it. She quit instead. These facts are undisputed.[2] The exact contents of that reprimand are unknown because Ugland has destroyed this crucial piece of evidence. It is undisputed, however, that a written reprimand

---

[1] Courts have declined to specifically address whether the traditional "adverse employment action" means exactly the same as the "tangible employment action" referenced by the Supreme Court in *Faragher*. *See Watts v. Kroger Co.*, 170 F.3d 505, 510 n. 4, 511 n. 5 (5th Cir.1999) ("We do not reach the question of whether 'tangible employment action,' as defined by [Burlington Industries], is identical to our definition of an 'adverse employment action.'....")

Most courts, however, use the two terms interchangeably, or hold that "tangible employment action" is a **lower, more easily satisfied standard** than the traditional "adverse employment action." *Id.; see also Indest v. Freeman Decorating, Inc.*, 168 F.3d 795, 803 (5th Cir. 1999)("First, to (re)state the obvious, absent *'any adverse employment action,' i.e., any tangible employment action*, an employer is never vicariously liable for a supervisor's conduct."); *Indest v. Freeman Decorating, Inc.*,164 F.3d 258, 264-65 (5th Cir. 1999)("When the harassment resulted in a *tangible adverse employment decision*, it is actionable under Title VII because it has *ipso facto* changed the terms and conditions of the plaintiff's work."); *Grandquest v. Mobile Pulley & Machine Works, Inc.*, 163 F.Supp.2d 1338, 1345 (S.D.Ala. 2001)("A *tangible, or adverse employment action* has been defined...").

[2] Ugland continues to claim that there is no record evidence of a written reprimand. They ignore the fact that both Heater and Ewing specifically testified to the fact that the reprimand was written, that the captain attempted to serve it upon Ewing, and that he destroyed it when she refused to accept it. Heater at 200-209, 210, 211; Ewing at 117-119, 122, 132-33. The only other record evidence on the subject comes from Captain Villacampa himself, who has filed two contradictory affidavits on the issue, and now claims to have no recollection of whether there was a reprimand or not. Villacampa at 146 (Q: "Do you have any clear memory as you sit here today what papers regarding this meeting were present with you in the room during that meeting?" A: "No, I do not.").

is the most serious form of discipline that can be meted out to a seaman, and can only be followed by termination in the event of further misconduct. Heater at 98. This is exactly the type of reprimand that courts of this Circuit have held to be an adverse employment action. *Fowler v. Sunrise Carpet Industries*, 911 F. Supp. 1560, 1582 (N.D.Ga. 1996)(reprimand that might subject an employee to subsequent dismissal for further misconduct constitutes an adverse employment action). The reprimand was written, would normally have been kept indefinitely in the employees personnel file, and normally threatened termination. This is the ultimate employment action that the Supreme Court intended to preclude an employer from raising the *Faragher* affirmative defense. *See Ellerth*, 524 U.S. at 762 ("A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors.")

Heater also recommended in writing after Ewing resigned that Ugland not re-hire her. Courts that have considered the question have determined that a recommendation not to re-hire is an adverse employment action. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)(listing as ineligible for rehire is adverse employment action); *Lewis v. YMCA*, 53 F. Supp.2d 1253, 1258 (N.D. Ala. 1999); *Sink v. Wal-Mart Stores, Inc.*, 147 F. Supp.2d 1085, 1099 (D. Kan. 2001)("The court concludes that defendant's listing plaintiff as ineligible for rehire is sufficient to constitute an adverse employment action.").

Ugland argues that it is entitled to assert the *Faragher* affirmative defense despite Heater's reprimand of Ewing and his recommendation that she be ineligible for re-hire because the reprimand was ultimately thrown away by the captain, and because the "ineligible for re-hire"

recommendation was given after Ewing resigned and after she requested an evaluation. Defendants cite no authority of any kind for this proposition. Jay Heater freely admitted at deposition that he drafted a written reprimand and the captain issued it to Ewing. The captain was in the middle of doing just that when Ewing was compelled to resign. Both Villacampa and Heater testified that normal company procedure would have been to put the reprimand in Ewing's personnel file after she resigned. Instead, the captain destroyed the evidence of the harassment. Ugland's spoliation of evidence does not change the fact that Ewing was issued a written reprimand qualifying as an adverse employment action under Eleventh Circuit precedent. Ugland may not destroy evidence, then point to its absence as a defense.

  The fact that Ewing requested a review before she left the El Morro and the fact that she had already resigned when Heater recommended that she not be re-hired also does not benefit Ugland here. Heater testified without reservation that every seaman that leaves the El Morro receives an evaluation containing a recommendation whether to re-hire the seaman. She would have been evaluated whether she requested it or not. Ewing's resignation before the negative evaluation is similarly unhelpful to the defendants. A decision or recommendation not to rehire an employee necessarily takes place after the victim's employment is terminated by herself or the employer. In each instance where a court has found a recommendation not to rehire to be an adverse employment action, the evaluation at issue was performed after the plaintiff left the defendant's employ. The existence of the recommendation to rehire and the written reprimand make Faragher unavailable to the defendants here.

> B.   *Faragher Defense in Unavailable Because the Harassment Against Ewing Was Reported but Ugland Undertook No Investigation and Took No Remedial Measures.*

If an employer has notice that a plaintiff has been the victim of sexual harassment, but takes no action to correct the abuse, then the Faragher affirmative defense is unavailable. *See Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 422 (11th Cir. 1999). In fact, a duty on the part of the employer to conduct a further investigation of a hostile work environment arises when a report or reports of sexual harassment to management suggests that the workplace may be charged in a sexually hostile manner. *Robinson v. Jacksonville Shipyards,* 760 F. Supp. 1486, 1530 (M.D.Fla.1991).

Here, it is undisputed that Captain Villacampa received a report from another officer on the El Morro that Jay Heater was sexually harassing Regina Ewing by calling "hey, come here you dumb bitch." Villacampa testified that he undertook no investigation of the complaint. He never interviewed Ewing. He took no remedial measures such as moving Ewing to a job without contact with Heater. Villacampa took no formal disciplinary action against Heater. Villacampa did not report the harassment to the home office. He simply told him to stop. Under these circumstances, Villacampa breached its duty to investigate sexual harassment and to take remedial measures. *Faragher* is unavailable, so summary judgment in Ewing's favor should be granted.

C. *Faragher Defense Is Unavailable Because the Officers Were Not Trained to Enforce Ugland's Harassment Policy.*

In order for a defendant to take advantage of the *Faragher* affirmative defense, a sexual harassment policy must not be administered "in bad faith" or be "otherwise defective or dysfunctional." *Madray*, 208 F.3d at 1299 (*quoting Faragher*, 524 U.S. at 807, 118 S.Ct. 2275). A policy is "defective" if those responsible for its enforcement lack training and knowledge sufficient to recognize, prevent, and correct workplace discrimination. As the EEOC has stated in one of its policy notices:

> An employer's duty to exercise due care includes instructing all of its supervisors and managers to address or report to appropriate officials complaints of harassment regardless of whether they are officially designated to take complaints and regardless of whether a complaint was framed in a way that conforms to the organization's particular complaint procedures.... An employer should ensure that its supervisors and managers understand their responsibilities under the organization's anti-harassment policy and complaint procedure. Periodic training of those individuals can help achieve that result. Such training should explain the types of conduct that violate the employer's anti-harassment policy; the seriousness of the policy; the responsibilities of supervisors and managers when they learn of alleged harassment; and the prohibition against retaliation.[3]

Here, Ugland's officers did not know what conduct constituted sexual harassment, and refused to enforce the policy when sexual harassment was reported to them. Captain Villacampa has testified that before the Ewing harassment, he had received <u>no training at all</u> from Ugland regarding Ugland's sexual harassment policy and its enforcement. Since Ewing fled the El Morro in November of 1999, he has received "less than one hour" of instruction on enforcing Ugland's

---

[3] The agency's guidelines, policy statements, and notices are persuasive authority for a court to consider. *See Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Scott v. Opelika City Schools*, 63 F.R.D. 144, 149 n. 12 (M.D.Ala.1974) (Johnson, C.J.)

sexual harassment policy. At deposition, in fact, Villacampa was obviously unfamiliar with Ugland's written policy. Counsel for Ugland had to define "retaliation" for Villacampa, and then had to stop the deposition while Villacampa read through the policy to see if retaliation was prohibited by it. Villacampa at 31-32. This fact is plainly recorded in the transcript. *Id.* When asked if Heater's conduct would violate Ugland's sexual harassment policy, he had no idea without being led through the document. After being lead through the policy by plaintiff's counsel for what appeared to be the first time, Villacampa admitted that Heater had clearly sexually harassed Ewing by calling her a "dumb bitch." Id. at 49-53.

These admissions demonstrate that the El Morro's officers were not trained to prevent and correct harassment.

Ewing was not the only reported victim of Heater's harassment on that very cruise. Her report was ignored as well. Gina Lightfoot complained that Heater was bragging to other crew members that he was having sexual relations with Lightfoot. Documents obtained in discovery show that the captain promised to investigate the matter and put a stop to it.[4] It is undisputed, however, that this harassment was never even raised to Heater by anyone at Ugland and it is

---

[4] "The following incident was reported to me after Mr. Heater had gone on vacation involving another female member of the crew. Ch/Stwd Ms. Gina Lightfoot came to see me the night before she was relieved on December 17, 1999. She wanted me to know that Ch/Mate Jay Heater had told other unlicenced crew members that he was **"doing her"**. She wanted to make it very clear to me that there was no truth to this, that she had never had any type of a "relationship" with Mr. Heater. I told her that I hadn't heard any such statements at all. When I asked the AB Mr. Sid Horton who stood watch with the Chief Mate about this, he did confirm to me that Jay Heater had told people this very thing. I told Ms. Lightfoot that I apologized for his making such an inconsiderate statement and that I would deal with Jay Heater when he returned from vacation." Letter from *El Morro* Captain Villacampa to Ugland V.P. Robert Rogers, attached as Exhibit 4 to Heater deposition (emphasis in original).

undisputed that Heater has never been counseled or disciplined in any way as a result of this report. In fact, Heater's evaluation for the voyage on which he harassed Ewing and Lightfoot contains only glowing praise. These facts make clear that Ugland's policy was ineffective, was not communicated to the officers, and was completely unenforced. The *Faragher* affirmative defense is not available under these circumstances.

## CONCLUSION

For the foregoing reasons, summary judgment in Plaintiff's favor should be granted as to Ugland's asserted *Faragher* affirmative defense.

David H. Pollack, Esq.
Counsel for Plaintiff
The Ingraham Building
25 S.E. 2nd Ave.
Suite 1020
Miami, FL 33131
Tel: (305) 372-5900

BY: _____
ROBERT F. ROSENWALD, JR.
Fla. Bar No. 0190039

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S. Mail this 26th day of June, 2002 to: Phillip A. Buhler, Esq., 501 West Bay Street, Suite 200, Jacksonville, FL 32202 and Thomas A. Boyd, Esq., 501 West Bay Street, Suite 100, Jacksonville, FL 32202.

_____
ROBERT F. ROSENWALD, JR.